FILED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS 2009 JUL 29  AM 10: 50
AUSTIN DIVISION
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| KIME MITCHELL, as next friend of her minor child R.M., | § § | |
| Plaintiff | § | A09CA568 LY |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| GEORGETOWN INDEPENDENT SCHOOL DISTRICT | § § | |
| Defendant | § | JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, as mother and next friend of her minor child R.M., files this Complaint against

Georgetown Independent School District, and would respectfully show:

**I. STATEMENT OF THE CLAIMS**

1.  Plaintiff complains that Georgetown Independent School District ("the District"

or"GISD") knowingly condoned, and refused and failed to remedy, the sexual harassment

perpetrated against her child by numerous students subject to the District's control, in violation

of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 ("Title IX").

2.  Defendant has a legal duty to provide a safe, non-discriminatory learning environment

for school children, a learning environment that includes protection for these children from

known or reasonably foreseeable sexual harm and harassment occurring during, or in connection

with, school activities, especially where the District had actual notice of the harassing conduct.

3.  In particular, GISD has a duty to prevent Plaintiff's child from suffering sexual

harassment at the hands of his peers.  By refusing to take sufficient remedial action to prevent

and stop such sexual harassment from occurring, the District demonstrated deliberate

indifference to, and *de facto* authorization of, the harassing and abusive conduct complained of

in this case.  Defendant's failure to fulfill its duties to protect Plaintiff's child proximately caused

injury to him. Specifically, GISD officials, who had authority to institute corrective measures on the District's behalf, had actual notice of the harassment and refused to take corrective measures to stop it, thereby causing the child to continue to endure unremitting harassment and abuse while under the supposed protection of GISD.

4. Plaintiff seeks injunctive, declaratory, and monetary relief, as well as costs and attorneys' fees, to remedy the wrongful deprivation, discrimination, and other harms her child has suffered and continues to suffer because of GISD's acts and omissions, and to prevent such injuries from occurring in the future.

## II. JURISDICTION AND VENUE

5. These claims arise under 20 U.S.C. § 1681, *et seq.* Jurisdiction is therefore conferred on this Court pursuant to 28 U.S.C. § 1331.

6. Jurisdiction for declaratory and other relief is pursuant to 28 U.S.C. §§ 2201 and 2202.

7. The events complained of herein all occurred within this judicial district and division. As such, venue is proper in this Court under 28 U.S.C. § 1391(b).

## III. PARTIES

8. R.M. is fifteen (15) years old. During the time that incidents giving rise to this Complaint occurred, R.M. resided with Plaintiff, Kime Mitchell, at 2302 Winchester Drive, Georgetown, Texas, 78626. R.M. was a student at GISD schools during the time period in which the harassing acts alleged in this Complaint occurred. R.M. attended Village Elementary School during fourth and fifth grades, Tippit Middle School during sixth, seventh, and eighth grades, and the Ninth Grade Center.

9. Kime Mitchell is a resident of Williamson County. She brings forward this Complaint as the mother, natural guardian, and next friend of her child, R.M.

10.  Defendant GISD is located within the jurisdiction of this Court and organized under the laws of Texas and may be served with process through its Superintendent, Abbe Boring, at the District's administrative offices, 603 Lakeway Drive, Georgetown, Texas, 78628. Administrators and individual school officials of GISD, as described herein, at all relevant times, acted as agents, servants, or employees of GISD, and acted within the scope of their authority, and at the attendant direction of, or with permission, consent, or ratification by, the District. Defendant was responsible for the administration of all public school business within its jurisdiction as to R.M., including the training of teachers at the child's schools as to safety, abuse, sexual harassment, and neglect of minors, the supervision of R.M.'s progress and security within District schools, and management of his course of study.

11.  At all times relevant to this complaint, Anne Spooner was the Principal of Village Elementary School, Carlos Cantu was the Principal of Tippit Middle School, and David Denny was the Principal of the Ninth Grade Center.  Joe Dan Lee and subsequently Abbe Boring were superintendents of GISD, respectively.  By law, they had the responsibility and authority for ensuring that the District's supervision and safekeeping of its students was undertaken in compliance with the District's policies and the laws of the United States and Texas.

## IV. STATEMENT OF FACTS

12.  R.M. has endured relentless name-calling by his peers beginning in the fourth grade and continuing through his ninth grade year.  On a daily basis, he is called "gay," "fag," "faggot," "fucking faggot," "homosexual," "homo," "female," "fucking female" and/or "bi-sexual."  He has been told by fellow students that he acts "like a girl" and is "worse than a female." In addition to pervasive verbal taunting, R.M. has been spit on, choked by classmates, and has suffered an array of physical injuries, including a sprained finger, bruising, and head trauma.  The tangible effects of the bullying on R.M. are pronounced. As a result of the constant

sexual harassment, he experiences suicidal thoughts and suffers from anxiety and depression. R.M. experiences physical effects of the bullying, including chronic stomach and headaches, which his doctors stated likely stem from the high level of stress and anxiety he regularly feels. He fears going to school and has discontinued participation in GISD-affiliated extra-curricular activities as a result of the harassment.

### A. Fourth Grade

13.   R.M. began suffering from harassment and bullying as a fourth grader. Students often referred to him as "gay" and "faggot." His male peers teased him for having female friends and allegedly dressing up in female clothing. In response, Ms. Mitchell called the school and attended meetings with his teacher.  To Ms. Mitchell's knowledge, no student was disciplined for such harassment; nor did GISD take effective remedial action.

### B. Fifth Grade

14.   When R.M. was in the fifth grade, he was sexually assaulted by another student while attending a school-sponsored trip to Peaceable Kingdom in Bell County, Texas. The trip was organized for students of the SOAR Program, a special education program, and the students spent the day swimming and playing games.  When it was time for the group to return to school, R.M. entered a bathroom stall to change his clothes. A fourth grade male student came in the bathroom, grabbed R.M. around the waist, pulled him toward him, and sexually assaulted him. He struggled with the boy and broke free and returned to the bus, where he told one of the teacher aides, Simone Stark, about the incident.  After R.M. told Ms. Mitchell about the assault when he returned home, she called Anne Spooner, the school principal, and told her what occurred during the field trip.  Ms. Spooner informed Ms. Mitchell that she thought the story unlikely, believing it was impossible for a fourth grade boy to have perpetrated a sexual assault.

15. Ms. Stark, the SOAR aide, spoke with Ms. Spooner the following day and later with Ms. Mitchell. That same day, Ms. Mitchell and R.M. visited Ms. Spooner, who told Ms. Mitchell that, in fact, fourth grade boys could perpetrate sexual assaults. Ms. Mitchell believes Ms. Spooner informed the GISD Superintendent (at that time, Joe Dan Lee) of the situation, but the District took no action to discipline the perpetrator of the sexual assault or protect R.M. from future sexual assaults at the hands of this student. The offending student remained in R.M.'s SOAR class and continued to ride on the same bus as R.M. Several students found out about the incident at Peaceable Kingdom and the name-calling and teasing R.M. experienced intensified.

**C.  Sixth Grade**

16. In sixth grade, Ms. Mitchell noticed physical changes in her child due to his anxiety. He experienced frequent headaches and stomach aches. These psychosomatic symptoms were, in large part, due to the constant harassment he experienced and his growing feeling that school was not a safe environment.

17. On almost a daily basis, R.M. was tripped and called "gay" and "faggot." Ms. Mitchell estimates that she went to the middle school ten to fifteen times in the child's sixth grade year to speak with school officials about the constant verbal, and increasingly physical, abuse. Sometimes, teachers would tell the bullies to stop the tripping and name-calling. However, as far as R.M. or Ms. Mitchell is aware, students were rarely, if ever, disciplined for such bullying, and the District never undertook any effective remedial action.

18. R.M. was choked by a fellow student in his language arts class. His head hit the windowsill. This occurred when his teacher, Carlotta Young, momentarily stepped out of the classroom. R.M. told her what occurred, but she replied that she could not discipline the offending student because she had no proof the student choked him. Ms. Mitchell filed a report of this assault with the Georgetown Police Department. She also called Mr. Cantu, the principal,

who said he would handle the situation. Mr. Cantu failed to follow up with Ms. Mitchell. When Ms. Mitchell called several times to inquire about the matter, the principal informed her that he had "handled the situation." R.M. saw the student who choked him in school on a continuous basis, indicating that the student was not effectively disciplined.

19. In addition to verbal and physical abuse, students caused damage to R.M's property by throwing his books in the trash and pouring soda on them, claiming he deserved this because he is a "fucking faggot." R.M. told Ms. Young about the incident, but she took no disciplinary action against the perpetrators. Ms. Mitchell contacted Kay Bradford, assistant principal, who informed Ms. Mitchell she would "handle the situation." Despite this assurance, Ms. Mitchell is unaware of any disciplinary action in regards to this incident.

**D. Seventh Grade**

20. An increasing number of students participated in the harassment of R.M. during his seventh grade year. Students called him sexually derogatory names such as "faggot." He was commonly tripped in the hallways as he walked to his classes. He was spit on approximately two times per week in the hallways and stairwells. The harassment burgeoned as a growing number of students perceived R.M. to be different than the majority of his young male peers; fellow students told him that he "acts like a girl" and is "worse than a female." R.M. became increasingly depressed throughout the year and began to have suicidal thoughts.

21. Not only did he endure harassment on a daily basis, but when he and/or his mother brought these incidents to the attention of teachers and administrators, he watched as the adults charged with protecting him from abuse did nothing. Principal Cantu told Ms. Mitchell that "kids will be kids."

22. The harassment was especially severe when R.M. tried out for the seventh grade basketball team. In the locker room during tryouts, the students who often called him names said

6

that "gay kids can't play basketball" and asked him, "Why are you here? Faggots don't play basketball." Students tripped him on the basketball court when he was performing drills and lay-ups. Ms. Mitchell called the basketball coach and complained about the bullying her son was experiencing during tryouts, but no students were disciplined.

23. R.M. was, again, choked by a student in class. He reported the assault to his teacher, Ms. Carlton, who told him not to be "such a tattle tell." Ms. Mitchell filed a police report with the Georgetown police after she saw marks on his neck. Ms. Mitchell also reported the incident to Principal Cantu, and called Ms. Carlton, who said she never saw the marks on R.M.'s neck. To Ms. Mitchell's knowledge, the student was not punished for choking her son.

24. R.M. endured other physical attacks. While he sat with several friends at a lunch table, a female student sitting at the same table told him that, if he did not stop kicking her underneath the table or if he would not kiss her, she would break his finger. He denied kicking her and refused to kiss her. In response, she grabbed his finger and twisted it. R.M. visited the school nurse, and she called Ms. Mitchell, informing her that her child's finger was not broken. Ms. Mitchell took R.M. to the hospital, where she was told his finger was sprained. She called Principal Cantu, who said he would investigate and "take care of the situation." Ms. Mitchell subsequently filed a report with the Georgetown police, but the officers said the offending student and R.M. were simply playing around. Ms. Mitchell confronted school officials and the police about their inaction, asking whether it would take someone killing her child for anyone to take action. Principal Cantu told Ms. Mitchell that "kids will be kids, and they play."

25. Ms. Mitchell contacted school officials and the police department after an eighth grade student punched R.M. on the arm during school hours, bruising it. Although the police charged the student, GISD took no known action against her.

26.   The male student who sexually molested R.M. when he was in fifth grade began attending Tippet Middle School when R.M. was in seventh grade.   Despite the District's knowledge of the sexual assault, school officials failed to take steps to him separate from the offending student.  Nor did they take other remedial measures.

27.   In the summer after seventh grade, R.M. attended summer school at Forbes Middle School.  He was required to attend summer classes, in part, due to his numerous absences caused by his fear of harassment and the anxiety and physical sickness he experienced as a result. Outside of the middle school, a summer school student picked him up and threw him onto the ground three times. The child reported the incident to the administrator present, Mr. Malden. The school took no apparent action, and R.M. saw the student in school the following day.

**E.   Eighth Grade**

28.   R.M.'s fear of peer harassment began to prevent him from participating in extra-curricular school activities.  The eighth grade track and field coach complimented him, telling him he was the best student at jumping hurdles.  Nevertheless, the R.M. declined to join the team, because students relentlessly called him names.  For example, they said, "faggots can't run track."  In the locker room, one of the students said, "Oh, everyone cover your butts, because [R.M.] is here." Students also made sexual gestures toward him, including moving their hands back and forth with their tongues in a gesture mimicking fellatio.

29.   One day, when the students were in the school cafeteria for an assembly, R.M. fell briefly fell asleep. A student, whose identity the child does not know, pulled the chair out from underneath him, and he fell to the ground.  He woke up in a different part of the cafeteria.  A nurse and principal were standing over him. They told him they thought he was faking.  The following day, R.M. visited a doctor, who confirmed that he had been knocked unconscious and experienced trauma to the head during his fall.

30. Ms. Mitchell subsequently called Principal Cantu, who said he would address the situation. When Ms. Mitchell followed up with him, he told her that the only information he gathered regarding the incident indicated that R.M. dozed off and fell out of his chair.

31. Two female students drew sexually degrading images of R.M. on school dictionaries in the room where detention was held. When he told Assistant Principal Bradford, she expressed her disapproval. Despite this, R.M. and Ms. Mitchell are unaware of any disciplinary action against the two students or any other effective remedial action.

32. During music class, a student told R.M. that he was going to blow him up because he was a "faggot." R.M. told his teacher of the death threat. The teacher questioned the student and sent him to the principal's office, but Ms. Mitchell was told that the threat was not specific enough for school officials to take any action.

33. A student created a fake MySpace page and called herself "Mike." Mike sent R.M. a message asking him if he was "bi, gay or straight" and told him that she thought he was cute. R.M. ignored the message. A student then hacked into R.M.'s account and replied to Mike saying that R.M. is "bi." Mike replied, "Everyone is going to know you are bi – MUAHHHH." The student who created the MySpage page called the Mitchell's answering machine and said, "Hi [R.M.], this is Mike, do you want to fuck now?"

34. The name-calling intensified after that incident. Ms. Mitchell called the school and spoke with an assistant principal, Ms. Molis, who was new to the school. Principal Molis offered to move R.M. to another school. She was the only administrator in the course of R.M.'s attendance at GISD schools who suggested that serious action could be warranted in response to the harassment R.M. endured. Nonetheless, this was not a viable option at the time, because Ms. Mitchell, as a single parent attending school herself, needed R.M. to go to a school close to her home. More significantly, Ms. Mitchell did not have reason to believe that District officials

9

would work to prevent or stop the harassment at any of its other schools. In addition, GISD middle schools fed into one GISD high school. Regardless of where he finished his eighth grade year, R.M. would be forced to attend high school with the same students who relentlessly harassed him at Village Elementary School and Tippit Middle School. No other disciplinary actions were proposed or undertaken by school administrators or District officials.

35.    The persistent harassment, especially the MySpace incident detailed in this Complaint, led R.M. to feel helpless, scared, and extremely anxious. He continued to become more depressed and was, at times, suicidal. R.M. began seeing a therapist in the spring of 2008 because of his worsening depression. He currently sees a psychologist once a week and a psychiatrist for medication every two months. He has been formally diagnosed with intense depressive disorder.

36.    In April 2008, R.M.'s psychologist sent a letter to Principal Cantu and Assistant Principal Bradford, discussing R.M.'s suicidal ideation. She wrote that "it has become clear that a lengthy history of feeling unsafe in the school environment is contributing significantly to his depression." The psychologist noted that R.M. reports "experiencing a barrage of racial and sexual insults and slurs on a daily basis at school." The letter relayed that R.M. describes "a variety of disturbing experiences of victimization at school by peers...that include physical assault, being choked on multiple occasions, being tripped, having his books thrown in the trash and liquids poured on his school materials, and peers defacing school property with sexually degrading images of [R.M.]."

37.    Further, the psychologist observed that the Mitchells feel "little to no support from school staff" and that the "behavior of some staff members has exacerbated their perception of Tippit [Middle School] as a hostile, unsafe environment where staff cannot be trusted to equally protect students regardless of race, sexual orientation or other characteristic." The psychologist

emphasized that it was imperative that these issues be addressed, indicating her hope to "work together to identify ways in which [R.M.] and school staff can create a school climate in which he feels safe."

38. The psychologist received no response to her letter from school officials or GISD administrators.

**F.   Ninth Grade**

39.  R.M. continued to endure harassment during his ninth grade year.  Students regularly called him "gay," "faggot," "fucking faggot," "bi," and "homo."  In addition, several female students "flashed" their bras to R.M.  Another female student showed him her bare breast during in-school detention.  He told the teacher in charge but the teacher took no action.  R.M. also talked to Assistant Principal Garza about the incidents, but Mr. Garza simply advised him to stay away from these female students.

40.   After R.M. befriended a female student, her boyfriend, also a peer of R.M., became jealous.  He called R.M. and threatened him.  She later apologized for her boyfriend's comments, and continued her friendship with R.M. The student's boyfriend began sending R.M. text messages, calling him a "fucking faggot" and "pussy."  He called R.M. "gay" and "a dumb nigger" and threatened to bash in his head.  He also had his friend trip R.M. and sent him a text message asking, "How was the trip, you fucking faggot?"

41.  Ms. Mitchell, horrified about the threats of serious bodily injury against her son, called the school several times and spoke with Principal Denny. The principal advised Ms. Mitchell to file a police report and assured her that he "would do what needed to be done." However, it is not clear what actions the principal took, if any.

42.  As evidenced by the above facts, the District has acted with deliberate indifference to the incessant harassment based on sex against R.M. because of his failure to conform to

masculine stereotypes. GISD rarely, if ever, disciplined students who have verbally, physically, or sexually abused R.M. Nor did they take other remedial action. R.M was not offered counseling or support to assist him in coping with the harassment.

43. Further, GISD officials failed to create programs or curricula to address and prevent the harassment and bullying taking place within their classrooms, hallways, cafeterias, and locker rooms. The District's inaction has perpetuated a world where R.M. fears both his peers and the adults who are charged with protecting him.

44. To avoid further hurt and pain caused by consistent harassment, R.M. has begun to withdraw. He eats his lunches in the bathroom to avoid contact with other students, does not attend school-sponsored activities that he would enjoy because he fears being called names such as "faggot," is often absent from school because his anxiety has caused him to feel physically ill, and has thoughts of ending his life. These are not the effects of run-of-the-mill school yard teasing. This is not a situation where "kids will be kids, and they play." This is a situation where a school district has intentionally refused to act to protect one of its students from unrelenting and severe harassment that has caused him to think about terminating his own life. The District has created an environment that perpetuates fear, anxiety, and pain – the opposite of the safe environment it should be cultivating for each and every one of its students.

### CAUSE OF ACTION

#### Title IX, Sexual Assault & Harassment

45. Plaintiff alleges a cause of action pursuant to Title IX, for the District's failure to timely and adequately address and remedy the sexual harassment to which her son was subjected. She also seeks damages under this federal statute to compensate her son for the harms he suffered as a result of the District's failure to take corrective action.

12

46. The District is a public entity and recipient of federal funds. As such, the District is subject to Title IX, which provides in relevant part, 20 U.S.C. § 1681(a):

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....

47. The acts and omissions of the District and its officials relating to the sexual abuse and harassment constitute unlawful discrimination on the basis of sex. Plaintiff alleges that the District acted with deliberate indifference to known acts of sexual harassment in its programs or activities, and that the harassment was so severe, pervasive, and objectively offensive that it effectively barred her son's access to educational opportunities and benefits.

48. Plaintiff's son suffered injury as a direct and proximate result of these unlawful acts, and will continue to suffer such injury in the future.

## INJUNCTIVE RELIEF

49.   Plaintiff and her son are entitled to injunctive relief to end the District's discriminatory and unlawful treatment.

50. Given the facts of this case and the experience of Plaintiff's son with the District, there are reasonable grounds to believe the District will continue to engage in conduct prohibited by federal law. Moreover, Plaintiff has repeatedly complained to the District about its discriminatory practices, but to no avail.

51. Unless this Court grants injunctive relief, Plaintiff and her son will suffer immediate and irreparable injury for which there is no remedy at law. This threatened harm far outweighs any possible harm the granting of injunctive relief might cause the District.

## DECLARATORY RELIEF

52. Pursuant to 28 U.S.C. §§ 2201(a) and 2202, Plaintiff seeks declaratory relief to vindicate the rights of her son under Title IX.

## ATTORNEYS' FEES AND COSTS

53. Plaintiff is entitled to reasonable attorneys' fees, litigation costs, and court costs, as allowed by 42 U.S.C. § 1988 against Defendant.

## JURY DEMAND

54. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff respectfully prays that this Court:

A. Grant a permanent injunction on behalf of Plaintiff's son, enjoining Defendant, the District, its employees, agents, and those acting in concert with the District or at its direction, from failing to prevent and punish sexual harassment and discrimination and from dealing inappropriately with such abusive conduct when it occurs;

B. Enter declaratory judgment that Defendant has deliberately and consciously discriminated against Plaintiff's son on the basis of his sex in violation of Title IX, by acting with deliberate indifference toward the sexual harassment he suffered;

C. Enter judgment on behalf of Plaintiff's son for money damages sufficient to compensate him for his injuries caused by Defendant;

D. Order Defendant to pay Plaintiff's reasonable attorneys' fees and costs; and,

E. Grant such other and further relief, at law or in equity, to which Plaintiff and her son, R.M., may be entitled.

DATED: July 29, 2009.

Respectfully submitted,

James C. Harrington
State Bar No. 09048500
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
   Telephone:  (512) 474-5073
   Telecopier: (512) 474-0726

ATTORNEY FOR PLAINTIFF

14